Argued September 11, affirmed December 12, 1962

# TAYLOR *v.* GLADDEN
### 377 P. 2d 14

*Duane R. Ertsgaard,* Salem, argued the cause and filed a brief for appellant.

*Harold W. Adams,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before McAllister, Chief Justice, and Sloan, O'Connell, Lusk and Denecke, Justices.

LUSK, J.

This is an appeal from a judgment of conviction of contempt of court.

The appellant, a prisoner in the Oregon State Penitentiary, appeared with his attorney in the court of the Honorable George A. Jones, circuit judge for Marion county, as plaintiff in a post conviction proceeding. His attorney presented to the court a motion for change of judge supported by an affidavit of prejudice pursuant to the statute. The motion was denied for the reason that the court had previously ruled on a demurrer in the same case. See ORS 14.270. Several other motions were presented and after the court had disposed of them, continued the case and ordered the appellant remanded to the custody of the warden of the penitentiary, the following, as disclosed by the transcript of the hearing, occurred:

"MR. TAYLOR: I think you better disqualify yourself.

"THE COURT: Mr. Taylor, I find you in contempt of Court.

"MR. TAYLOR: How much do I owe you?

"THE COURT: I find you in contempt of Court and you will be here next Monday morning for contempt proceedings.

"MR. TAYLOR: I can't express my contempt for you."

On the following Monday the appellant again appeared with his attorney before Judge Jones, who sentenced the appellant to serve a term not to exceed six months in the county jail, such sentence to commence after his legal release from the penitentiary. The order entered by the court found that the appellant "acted in a defiant, contemptuous, insolent and disrespectful manner in the immediate view and presence of said court as follows:" (quoting from the transcript the colloquy set forth above) and "[t]hat said statements were made by the plaintiff, Andrew Taylor, in an insolent and contemptuous manner and the latter statement was particularly scurrilous." The "latter statement" was: "I can't express my contempt for you."

The appellant contends, first, that the court was without jurisdiction to punish him for contempt because the prejudice of the judge was "established as a matter of law" when the appellant filed his motion for change of judge supported by affidavit. The contention is without merit. Even though the judge erred in denying the motion and was therefore disqualified to try the post conviction proceeding, he was not on that account deprived of jurisdiction to maintain order and decorum in his court or to vindicate the authority of the court by punishment for contempt. *White v. State,* 105 Ga. App. 616, 125 SE2d 239. It should be added, however, that, since the judge had ruled on a demurrer to the appellant's initial petition in the post

conviction proceeding, the privilege of disqualifying the judge under the affidavit of prejudice statute was no longer available to the plaintiff. ORS 14.270. The argument in the brief of the appellant that the statute is for that reason unconstitutional, is groundless. The "prejudice" of which the statute speaks is not prejudice in fact, but a statutory prejudice which may be established by the filing of an affidavit that contains nothing but conclusions. ORS 14.250–14.270. The motion for change of judge supported by an affidavit of prejudice is a statutory scheme for disqualifying a judge before whom a litigant or his attorney does not wish to try his case, for reasons good or bad or for no reason at all. There was no such statute in this state until 1919 (Oregon Laws 1919, ch 160). The statute could be repealed tomorrow without affecting the constitutional rights of anyone.

The appellant next contends that the judgment of contempt is void because the state was not made a party to the proceeding. The judgment order bears the title of the post conviction case. So, also, does the warrant of commitment, though it is issued in the name of "The people of the State of Oregon."

■ The contempt in this case was "committed in the immediate view and presence of the court" and "may be punished summarily." ORS 33.030. Conduct of the defendant such as is disclosed by the record is defined as a contempt in ORS 33.010 (1) (a), which reads:

> "Disorderly, contemptuous or insolent behavior toward the judge, while holding the court, tending to impair its authority or to interrupt the due course of a trial or other judicial proceeding."

The power of the courts to punish for a direct contempt is not, however, derived from the statute, but is

inherent in all courts and arises from necessity. *Rust v. Pratt,* 157 Or 505, 511, 72 P2d 533, app dis 303 US 621, 58 S Ct 648, 82 L ed 1084. Differently from proceedings for indirect contempts, which must be instituted by affidavit and the issuance of a show cause order or warrant of arrest, ORS 33.040, no pleading is required in cases of direct contempt but the offence may, as the statute says, "be punished summarily."

■ ORS 33.060 provides: "In the proceeding for a contempt, the state is the plaintiff." The argument of defendant proceeds upon the assumption that unless the state is named as a party plaintiff in the title of the cause the court is without jurisdiction to proceed. But in cases of direct contempt jurisdiction of the person of the defendant "attache[s] instantly upon the contempt being committed in the presence of the court." *Ex parte Terry,* 128 US 289, 311, 9 S Ct 77, 32 L ed 405; *In re Wright's Estate* (Ohio App) 123 NE2d 52, 58, reversed in part, 165 Ohio St 15, 133 NE2d 350; Annotation, 57 ALR 545. And we think that it would be according unwarranted importance to mere form if it were to be held that the court lost jurisdiction merely because of failure to entitle correctly its order memorializing the judgement already pronounced. The body of the order complies fully with the requirements of the statute and in these circumstances the defect in the title was a mere irregularity. The case is distinguishable from *State ex rel Hewson v. Hewson,* 129 Or 612, 277 P 1012, 63 ALR 1216, and *Trullinger v. Howe,* 58 Or 73, 113 P 4, both indirect contempts, where it was held that omissions of the state as a party from the title of the cause rendered the affidavit—the initial pleading in such cases—vulnerable to demurrer.

■ It is next urged that the defendant's language

was not contemptuous and that the court erred in denying him a hearing on the question whether he was in contempt. The language used by the defendant is itself sufficient answer to the first part of this contention. The point need not be labored. As to the objection that the defendant was not accorded a hearing, it appears from the transcript that prior to imposing sentence the court asked the attorney for the defendant if he had anything to say and the attorney answered that his client felt that he was entitled to a hearing and to be represented by counsel at the time of the hearing and to subpoena witnesses. Further, the defendant's attorney said that he objected to the jurisdiction of the court because the court was disqualified by the filing of the affidavit of prejudice and that the court was biased and prejudiced. The latter objection has already been considered.

As above stated, the statute provides that the accused may be punished summarily. The statute is but a legislative expression of the common law rule. See Annotation, 57 ALR 545. *In ex parte Terry,* supra, the Supreme Court of the United States, after an elaborate review of the authorities, said, at page 313:

> "We have seen that it is a settled doctrine in the jurisprudence both of England and of this country, never supposed to be in conflict with the liberty of the citizen, that for direct contempts committed in the face of the court, at least one of superior jurisdiction, the offender may, in its discretion, be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than its actual knowledge of what occurred; and that, according to an unbroken chain of authorities, reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protec-

tion of the courts in the discharge of their functions. Without it, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them."

■ It is an erroneous idea that a person is entitled to a hearing on a charge of contempt committed in the face of the court.

■■ Finally, it is contended that the punishment imposed is excessive. That decision was committed to the sound discretion of the trial court and, in the absence of an abuse of that discretion, will not be disturbed on appeal. *MacInnis v. United States,* 191 F2d 157 (9th Cir. 1951). We have here not only the statements of the defendant, but the trial judge's finding that his manner was "insolent and contemptuous," which is in complete harmony with the defendant's concluding words "I can't express my contempt for you." We cannot say that the judge abused his discretion.

■ Although a convict, the defendant was entitled to the same fair, courteous and impartial treatment on the part of the judge when he appeared in court seeking relief under the post conviction act as any other litigant. The record shows that this was the character of treatment that he was accorded. On the other hand, he was subject to the same rules of decorum and respectful demeanor as any other litigant. He had no privilege to insult the judge and it became not only the right, but the duty of the judge to deal with the incident in a manner which would serve to vindicate the authority and dignity of the court.

The judgment is affirmed.