Argued March 18, affirmed April 16, petition for rehearing
denied May 12, 1970. Petition for review denied
by Supreme Court June 16, 1970

# STATE OF OREGON, *Respondent, v.*
# ANDREW A. NEWTON, *Appellant.*
## No. 67295
467 P2d 978

*Ralph W. G. Wyckoff,* Salem, argued the cause and filed the brief for appellant.

*Gary D. Gortmaker,* District Attorney, Salem, argued the cause and filed the brief for respondent.

418

LANGTRY, J.

Defendant has appealed from a finding of contempt of court under ORS 33.030, and the imposition of a 6 months'·sentence therefor, to be served after conclusion of a prison sentence defendant is now serving.

Defendant, who was serving a term in the Oregon State Penitentiary, had been indicted for assault, and appeared for arraignment before Judge Val D. Sloper, Marion County Circuit Court, on April 17, 1969. The defendant indicated to the court that he would obtain his own attorney, and asked for a change of venue to Multnomah County. The judge advised defendant of his rights and continued the matter for defendant to contact his attorney.

On May 1, 1969, defendant appeared again in the same court, and the district attorney advised the court that the attorney designated by defendant had declined to represent him. Defendant said, "* * * I will not accept any court-appointed lawyer in Salem." The matter was continued and came up again on June 2, 1969. Defendant still had no attorney and the judge announced he would appoint a Marion County lawyer to represent defendant, continuing the matter to June 9. On June 9, 1969, the matter came up again, and defendant appeared with his court-appointed attorney, Mr. Wyckoff. Mr. Wyckoff informed the court that defendant had told him he wanted to file a motion for a change of venue, and to set aside the indictment because there were no black people on the grand jury that indicted him. The following ensued:

"THE COURT: How do you know that there

are no colored people on the Grand Jury, Mr. Newton?

"DEFENDANT: I have that right to find out. This corpus juris stinks. I have a right to have a all complete black Grand Jury and a all complete black jury in my trial.

"THE COURT: Well, you see, your understanding and interpretation of the law is far different than mine, Mr. Newton. Because I'm the judge—

"DEFENDANT: I know you're the judge—

"THE COURT: I decide what is right and proper.

"DEFENDANT: Yeah.

"THE COURT: This is the time set by the Court for you to enter a plea, Mr. Newton. If you refuse to enter one on your behalf, I will enter a plea of not guilty.

"DEFENDANT: Are you denying the fact that I have a motion to be filed in the court and it can't wait?

"THE COURT: What is your motion, Mr. Newton?

"DEFENDANT: The motion is to set aside the indictment.

"THE COURT: Okay. I deny the motion to set aside the indictment, on the basis—

"DEFENDANT: (interrupting) Then I have a motion to change venue.

"THE COURT: You may file it. Will you hand it, Mr. Norblad, to the clerk, please.

"DEFENDANT: What kind of court are you running, a Ku Klux Klan or Nazi?—Make your choice.

"MR. WYCKOFF: Your Honor please, that's a copy of one that I had prepared. I have the original that I will sign now.

"DEFENDANT: May I also ask—Why do you let your cops in here wear guns in court? That's illegal—don't you know that? Or do you run just what I asked you? Are you any relation to Lester Maddox or something?

"THE COURT: Mr. Newton—

"DEFENDANT: (interrupting) No 'Mister Newton'—you give me some consideration and start treating me as a man instead of a child. These people are not supposed to walk in here with guns in their hands.

"THE COURT: These people in the courtroom are here at my invitation.

"DEFENDANT: Yeah—that's also grounds for dismissal and also for retrial, if there was a trial here.

"THE COURT: I will deny the motion for change of venue, Mr. Newton.

"DEFENDANT: Well, you won't try me in here because you won't even get me into this court.

"THE COURT: And I will enter a plea of not guilty in your behalf. That will be all.

"DEFENDANT: That's it. See if I come here any more—Sloper.

"THE COURT: Mr. Newton, I am going to find you in contempt of court.

"DEFENDANT: You can find me in contempt of court—I'm doing ten years flat now and I'm facing a habitual criminal act now, and I don't care a bit about your old jive time or your old butt.

"THE COURT: The sentence that I impose will be six months in the county jail, to commence at the expiration of whatever sentence you may be serving at the present time in the Penitentiary.

"DEFENDANT: It doesn't matter—you can do it any way you want to.

"THE COURT: That will be all.

"DEFENDANT: That's all?

"THE COURT: That's all.

"DEFENDANT: Okay, Honky."

The finding of contempt for this conduct and the sentence imposed at that time without further hearing were within the authority and discretion of the trial judge. *Taylor v. Gladden*, 232 Or 599, 377 P2d 14 (1962).

In *Illinois v. Allen*, 397 US 337, 90 S Ct 1057, 25 LE2d 353 (1970), the United States Supreme Court said:

"It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him; thereby keeping him present; (2) *cite him for contempt*; (3) take him out of the courtroom until he promises to conduct himself properly.

"* * * * *

"* * * [C]riminal contempt has obvious limitations as a sanction when the defendant is charged with a crime so serious that a very severe sentence such as death or life imprisonment is likely to be imposed. In such a case the defendant might not be affected by a mere contempt sentence when

he ultimately faces a far more serious sanction. Nevertheless, the contempt remedy should be borne in mind by a judge in the circumstances of this case.

"* * * It must be recognized, however, that a defendant might conceivably, as a matter of calculated strategy, elect to spend a prolonged period in confinement for contempt in the hope that adverse witnesses might be unavailable after a lapse of time. A court must guard against allowing a defendant to profit from his own wrong in this way." 397 US at 343. (Emphasis supplied.)

Affirmed.