Argued April 27, affirmed July 5, reconsideration denied August 11, petition for review allowed October 25, 1977

STATE ex rel SPENCER, *Respondent,*
*v.*
HOWE, *Appellant.*
(No. Misc. 9107, CA 7208)
566 P2d 190

Diana I. Stuart, Certified Law Student, Salem, argued the cause for appellant. On the brief were Schlegel, Milbank, Wheeler, Jarman & Hilgemann and David A. Hilgemann, Salem.

W. Michael Gillette, Solicitor General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

LEE, J.

**LEE, J.**

Defendant appeals from an order finding him in direct contempt of the Lane County Circuit Court, and sentencing him to a six-month term of incarceration, based upon his refusal to "answer as a witness."[1] Entered summarily, the order is challenged both on the grounds that defendant was denied his right to "due process" and that the sanction imposed was in excess of that authorized by statute.

Convicted of the crime of robbery in the first degree defendant had been in the custody of the Corrections Division for approximately one year when, on October 8, 1976, he was called to testify for the state in the trial of an individual charged with participating in the same robbery. Sworn as a witness and asked by the prosecutor whether he had in fact been "convicted of an armed robbery which occurred in Lane County, Oregon at the Willis Union," defendant declined to answer, explaining that he would refuse to answer any and all questions relating to the incident at issue because

> "[i]f I was to give testimony that was damaging to the [accused], then I would be putting my life in jeopardy upon return to the penitentiary."

When defendant persisted in his refusal to answer the question posed despite the court's admonition to the effect that he had no legal privilege to decline to answer,[2] he was summarily found to be in "willful

---

[1] "(1) The following acts or omissions, in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

"* * * * *

"(j) Disobedience of a subpena duly served, or refusing to be sworn or answer as a witness." ORS 33.010(1)(j).

[2] On appeal defendant contends for the first time that because neither his conviction for first degree robbery nor his sentence on that conviction had become final at the time he was called as a witness, his refusal to answer was protected by the "self-incrimination" provisions of both the United States and Oregon Constitutions and did not, therefore, constitute a contempt within ORS 33.010(1)(j). Defendant did not specifically assert

contempt of the direct order of [the] Court * * *"[3] and sentenced to a six-month term of imprisonment in the county jail.

ORS 33.030 provides in pertinent part that:

> "When a contempt is committed in the immediate view and presence of the court or officer, it may be punished summarily * * *."

As the court noted in *Taylor v. Gladden,* 232 Or 599, 377 P2d 14 (1962), the power of a court to summarily respond to a direct contempt—i.e., any wilful act or omission occurring in the presence of and observed by the court which tends to impair its authority or to interrupt the due course of a judicial proceeding—is not derived from the statute but is inherent—ORS 33.030 being but a legislative expression of the common law rule.[4] In the course of upholding contempt orders summarily entered when each of four different witnesses refused without privilege to respond to questions posed by the prosecutor in a criminal proceeding, the court noted in *Rust v. Pratt,* 157 Or 505,

---

any constitutional privilege at the time he refused to testify; in light of that failure there is some question as to whether he may now invoke the privilege as a defense. *See Garner v. United States,* 424 US 648, 96 S Ct 1178, 47 L Ed 2d 370 (1976); *State v. Hickmann,* 273 Or 358, 540 P2d 1406 (1975). Had the privilege been asserted below, it does not appear that it could have properly been interposed to avoid the only question actually asked; had the defendant suggested that his reluctance to testify was based upon the fear of incriminating himself, the court may very well have proceeded to direct the prosecutor to indicate the nature of the questioning anticipated in order to determine whether the privilege was in fact available.

³The court specifically found that defendant's conduct in refusing to testify had

"* * * first, interrupted the due course of a trial and, secondly, involved disobedience of a lawful order of the Court * * * third, it tended to impair the authority of the Court and, fourth, was to the prejudice of the administration of justice.

"* * * * *

"* * * [T]he refusal of [defendant] was to the prejudice of the right or remedy of the State of Oregon in this proceeding."

¹*See State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 405 P2d 510, 407 P2d 250 (1965), *cert denied* 384 US 943 (1966).

[ 28 ]

511-12, 72 P2d 533, *appeal dismissed* 303 US 621 (1937), that:

"* * * The power to punish for contempt is a power not derived from any statute, but is inherent in all courts, and arises from necessity. It is implied because it is necessary to the exercise of all other powers. Its existence is essential to the preservation of order in judicial proceedings, and to enforce judgments, orders and writs of the courts, and consequently to due administration of justice * * *.

"* * * * *

"Section 8-503, Oregon Code 1930 [now ORS 33.030], provides that when a contempt is committed in the immediate view and presence of the court it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate presence, determining that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed. The power of the court to punish summarily for contempt has existed from the earliest period of the common law *and is not within the application of the constitutional provisions guaranteeing a trial by jury or providing against or depriving persons of liberty without due process of law* * * *." (Emphasis supplied.)

More recently in *United States v. Wilson,* 421 US 309, 95 S Ct 1802, 44 L Ed 2d 186 (1975), the court specifically held that a district court might summarily impose punishment pursuant to Fed R Crim P 42(a)[5] when a witness refuses, without justification to testify:

"The face-to-face refusal to comply with the court's order itself constituted an affront to the court, and when that kind of refusal disrupts and frustrates an ongoing proceeding, as it did here, summary contempt must be available to vindicate the authority of the court as well as to provide the recalcitrant witness with some incen-

---

[5] "A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record." Fed R Crim P 42(a).

[ 29 ]

tive to testify. *In re Chiles,* 22 Wall. 157, 168 (1875). Whether such incentive is necessary in a particular case is a matter the Rule wisely leaves to the discretion of the trial court."[6] (Footnotes omitted.) 421 US at 316-17.

■ The authority to punish direct contempts with which a circuit court is endowed is similarly unrestriced by the terms of ORS 33.030. The exercise of that authority in this case did not, we find, amount to an abuse of its discretion and gave rise to no violation of due process. *Cf. State ex rel Beckett v. Stockett,* 26 Or App 167, 552 P2d 838 (1976).

■ ORS 33.020(1) provides in effect that where an individual is guilty of contempt by virture of an act or omission which was neither "disorderly" in the sense that it amounted to a "breach of the peace" nor contemptuously or insolently directed toward the presiding judge, no punishment greater than a fine of $100 may be imposed unless it appears that the contempt "defeated or prejudiced" the "right or remedy" of a party to the action. It is conceded that defendant's refusal to "answer as a witness" did not constitute contemptuous conduct of a kind which would permit the imposition of a jail sentence in the absence of a finding that a right or remedy had been defeated or prejudiced.[7] Although the order of contempt did, in fact, include the specific finding that defendant's refusal to answer as a witness "defeats and prejudices the rights and remedies of the State of Oregon," defendant argues that because the trial in which the contempt occurred ultimately resulted in the conviction of the individual charged, his refusal to

---

[6]In a concurring opinion Justice Blackmun emphasized that:

"* * * [S]ummary criminal contempt is a necessary and legitimate part of a court's arsenal of weapons to prevent obstruction, violent or otherwise, of its proceedings. It is not seriously disputed that a refusal to testify is punishable as a criminal contempt. So long as this Court holds, as it has, that the summary procedure of Rule 42(a) satisfies the requirements of due process, the Rule should be read to mean precisely what it says." *United States v. Wilson,* 421 US 309, 321-22, 95 S Ct 1802, 44 L Ed 2d 186 (1975).

[7] *Cf. State v. Edwards,* 252 Or 325, 446 P2d 659 (1968), 449 P2d 448 (1969).

[ 30 ]

testify could not, as a matter of law, have defeated or prejudiced the state's case. Quite obviously the "remedy" sought by the state in its prosecution of defendant's accomplice was not "defeated" by the unavailability of defendant's pertinent and material testimony. At the time of the contempt the court might reasonably have concluded, however, that the unavailability of the testimony had in fact "prejudiced" the state's case. That the prejudicial effect of defendant's conduct did not ultimately prove to be fatal to the prosecution is of no consequence. *Cf. Rust v. Pratt, supra.*

Affirmed.