Argued and submitted January 17, judgment of contempt reversed; remanded for
further proceedings March 14, 2001

In the Matter of L. Lee Ferguson.

STATE OF OREGON,
*Respondent,*

*v.*

L. LEE FERGUSON,
*Appellant.*

(00-0843-Z-0; CA A109806)

20 P3d 242

William A. Mansfield argued the cause and filed the briefs for appellant.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendant appeals from a judgment of contempt entered after she allegedly made a misrepresentation of fact to the trial judge in open court. ORS 33.096. Defendant argues that the trial court was not authorized to hold her in contempt summarily when the underlying event, about which the alleged misrepresentation was made, did not occur in the presence of the court while sitting in a judicial capacity. Defendant also argues that the judgment should be reversed, because the trial court failed to find that the alleged misrepresentation was willful. ORS 33.015(2). We hold that the court erred in employing summary contempt procedures and, therefore, we reverse the judgment of contempt and remand for further proceedings.

The dispute in the present case centers on the meaning of the phrase "presence of the court" contained in ORS 33.096 and ORS 33.015(2). ORS 33.096 provides:

> "A court may summarily impose a sanction upon a person who commits a contempt of court in the immediate view and *presence of the court*. The sanction may be imposed for the purpose of preserving order in the court or protecting the authority and dignity of the court. The provisions of ORS 33.055 and 33.065 do not apply to summary imposition of sanctions under this section." (Emphasis added.)

"Contempt of court" is defined in ORS 33.015(2), which provides, in part:

> " 'Contempt of court' means the following acts, done willfully:
>
> "(a)   Misconduct in the *presence of the court* that interferes with a court proceeding or with the administration of justice, or that impairs the respect due the court[.]" (Emphasis added.)

The episode giving rise to the contempt judgment occurred on March 2, 2000, near the conclusion of a civil trial in which defendant was the attorney for one of the litigants. The case was submitted to the jury at 11:31 a.m. After the jury retired to deliberate, the court asked the attorneys to let the court know where they would be between "now and

noon," but said that between noon and 1:30 p.m. the court would be otherwise occupied, so the attorneys could take a break as well.

The jury returned with a verdict very close to 12:00 noon.[1] After unsuccessfully attempting to locate defendant, the court recessed until 1:30 p.m. At 1:30, the court reconvened, and defendant still was not present. The court again recessed until 1:41 p.m., when defendant arrived. At that time, the following colloquy occurred between the court and defendant:

"THE COURT: [Defendant], the jury reached a verdict before the noon hour. We were unable to locate you and so they had to come back at 1:30 and we've now been waiting this while for you to arrive and I do think—

"[DEFENDANT]: Your Honor, we were sitting right on out here.

"THE COURT: No you weren't. *We all looked for you and you were not there.* So, I do think that you owe the jury an apology.

"[DEFENDANT]: I apologize but we were sitting out there until—

"THE COURT: No. No, you weren't, [Defendant]. *We all checked*, the bailiff, the clerk, *myself* and [opposing counsel] checked for you before the noon hour and you were not here. And we called your office, got an answering machine, we looked in the bathroom for you—

"[DEFENDANT]: My client and her husband and I were sitting out here." (Emphasis added.)

The court did not respond to defendant's final declaration and, instead, received the verdict. After receiving the verdict, the court apologized for the "inconvenience" that the jurors had experienced, presumably referring to defendant's tardiness. The court then excused the jury, but the court and counsel remained in open court on the record. At that point, defendant continued to insist that she had been in the hallway at noon:

---

[1] The record contains conflicting statements about whether the jury returned with a verdict slightly before or slightly after noon.

"[DEFENDANT]: Your Honor, just for the record my client will attest that we were out there.

"THE COURT: [Defendant], I don't know what to tell you, I've said it twice already. [Opposing counsel] checked, *I checked*, the bailiff checked, the clerk checked, you were not out there and it was not yet 12:00.

"And so, I am, quite frankly, I take this as a misrepresentation to the court and I'm going to have to think about how I'm going to deal with this." (Emphasis added.)

After a brief recess, the court returned and informed defendant that it was finding her in contempt. The court did not hold an evidentiary hearing. The court entered a written judgment five days later that required defendant to pay $269.92—the jury fees in the underlying civil trial—as a remedial contempt sanction. The court made no finding of willfulness on the record or in the contempt judgment.

On appeal, defendant argues that the court was not authorized to hold her in contempt in a summary proceeding, because the entire conduct constituting the alleged contempt did not take place while the court was in official session. If defendant's argument is correct, she was entitled to appropriate procedural safeguards, including a hearing, in advance of any determination that she engaged in misconduct constituting contempt. *See* ORS 33.055 (providing the procedure for the imposition of remedial sanctions). Defendant also argues that the judgment is invalid because the court did not find that her actions were willful.

The state responds that the court was authorized to proceed in summary fashion because defendant's assertions that she had been in the hallway at noon—the alleged misrepresentations—were made in the presence of the court while it was in session. The state further asserts that defendant's contradiction of the judge, in the presence of the jury, was as much the basis for the contempt order as was the alleged misrepresentation. According to the state, we could affirm solely on that ground. Finally, the state argues that there is "no procedural requirement that an express finding of willfulness" be included in a summary contempt judgment.

■      We first address the ground on which the trial court held defendant in contempt. On the record, the court stated that defendant's statements were a *"misrepresentation* to the court." (Emphasis added.) The court also made clear that it was "more upset at this point about *your telling me something that I personally know is not true* [than] I am about your being late." (Emphasis added.) Additionally, in a letter to defendant's attorney, the trial judge reiterated that "the Judgment of Civil Contempt was based on *your client's misrepresentation to the court* concerning her noncompliance with the court's prior directive * * *." (Emphasis in original.) It is clear from those statements that the court found defendant in contempt based *only* on the substance of defendant's purported misrepresentation and not based on defendant's acts of contradicting or disputing with the court. Because the judgment of contempt depended upon the court having determined that defendant engaged in particular misconduct, *see* ORS 33.015(2), it is beside the point that the court also could have held defendant in contempt on a different ground. Therefore, we do not consider further the state's argument that defendant's mere acts of contradicting the court constituted contempt.

■      Before we turn to the decisive issue, we briefly consider the nature of summary contempt proceedings. A court has inherent authority to sanction summarily contempt committed in its immediate view and presence in order to protect the dignity, authority, and order of the court. *See State v. Baker*, 126 Or App 508, 513, 868 P2d 1368, *rev den* 318 Or 661 (1994) (explaining the rationale behind summary contempt proceedings under ORS 33.096). That inherent authority does not offend federal constitutional due process requirements. In *In re Oliver*, 333 US 257, 275, 68 S Ct 499, 92 L Ed 682 (1948), the Supreme Court held that due process requirements in contempt cases do not apply to

> "charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where *all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court,* and where immediate punishment is essential to prevent 'demoralization of the court's authority.' " (Citing *Cooke v. United States*, 267 US 517, 45 S Ct 390, 69 L Ed 767 (1925)) (emphasis added).

On the other hand, if conduct constituting contempt does not occur in the immediate view and presence of the court, it may not be punished summarily. A defendant charged with "indirect contempt" must be afforded certain statutorily and constitutionally required procedures, including the right to a hearing. ORS 33.055; ORS 33.065; *see also Oliver*, 333 US at 274-76.

■ With the foregoing in mind, we turn to the parties' disagreement about the meaning of the statutory phrase "presence of the court." In construing that phrase, we examine the text and the context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Although its application to the present circumstances presents an issue of first impression, the questioned phrase is a well-established legal term that has long held a place in the common law of contempt. *See, e.g., State v. Noble*, 314 Or 624, 628-29, 842 P2d 780 (1992) (describing the common law and statutory contempt provisions that predated the adoption of the Oregon Constitution). Therefore, our construction of the statute includes an examination of the pre-existing common law and statutory framework within which it was enacted. *McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996) (applying principle to analysis of statutory text); *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998) (applying principle to analysis of statutory context).

■ In *Barton v. Maxwell*, 325 Or 72, 75-76, 933 P2d 966 (1997), the Supreme Court held that:

> "ORS 33.096 was adopted in 1991 as a part of a comprehensive reform of several statutes that control proceedings for contempt of court. Or Laws 1991, ch 724, §§ 1-14. The preexisting statutory scheme incorporated several concepts regarding contempt of court that had their origin in the common law. One concept was that a 'direct' contempt is one committed *in the presence of the court while sitting in a judicial capacity*." (Emphasis added.)

*See also State v. Driscoll*, 151 Or 363, 368, 50 P2d 581 (1935) (attempt to bribe a judge in chambers cannot be sanctioned by summary contempt); *Baker*, 126 Or App at 511 (defendant who berated judge who was signing papers in his office could not be summarily held in contempt). ORS 33.096 maintains

that rule intact. *Barton*, 325 Or at 75-76. Thus, conduct amounting to direct contempt is generally "disclosed by the record." *Taylor v. Gladden*, 232 Or 599, 603, 377 P2d 14 (1962). In that way, an appellate court can conduct meaningful review so as to determine whether the record supports a finding of contempt and justifies the sanction imposed. *See City of Klamath Falls v. Bailey*, 43 Or App 331, 334, 602 P2d 1107 (1979) (in most instances, reviewing court can determine from transcript of summary contempt proceedings whether adjudication is supported by evidence and law).

The state argues that defendant's misconduct occurred in the presence of the court because her representation was made on the record while the court was in session. We disagree. Defendant was not adjudged in contempt merely for making a representation to the court but, rather, because she made the representation *and* the court believed that it was false.[2] The court's professed knowledge that the representation was false did not authorize it to hold defendant in contempt summarily, because the court did not acquire that knowledge while in session during a judicial proceeding. *See Driscoll*, 151 Or at 368-69. Instead, the court acquired its asserted knowledge by personally observing the hallway outside the courtroom, off the record, while in recess. In that capacity, although clothed with a judicial purpose, the judge was not acting as *a court while sitting judicially*. *See Baker*, 126 Or App at 511-14. Because the observation required to establish that defendant's representation was false did not occur in the presence of the court, the court erred in summarily holding defendant in contempt.[3]

---

[2] A misrepresentation, in its ordinary sense, is a false representation of fact. *In re Brown*, 326 Or 582, 595, 956 P2d 188 (1998).

[3] Our conclusion is consistent with the common-law meaning of "presence of the court" in other jurisdictions. The Texas Court of Appeals, for example, has held that presenting false documents and making false statements to a court amounts to indirect contempt and "the alleged contemnor has the right to notice of the charge, a right to a trial or hearing, and a right to counsel." *Ex parte Powell*, 883 SW2d 775, 777 (Tex App 1994). The North Carolina Court of Appeals faced a similar issue in *In Re Edison*, 190 SE2d 235 (NC App 1972). There, the trial court had received an affidavit from the alleged contemnor. A month later, after conducting an independent investigation and concluding that the defendant submitted a false affidavit, the trial court held him in direct contempt. On appeal, the court held that the false testimony did not constitute direct contempt, because "all the facts necessary to establish the false testimony were not before the court, therefore, it [was]

■ Defendant next argues that the trial court erred by failing to make a specific finding that she acted willfully. Because the issue may arise on remand, we briefly address the state's argument that ORS 33.055, the statute providing for remedial contempt sanctions, does not expressly require such a finding. This court has held that "[a] contempt judgment must be supported by specific findings, including a finding that the violation of the court's order was 'willful.'" *Patchett and Patchett*, 156 Or App 69, 72, 964 P2d 1114 (1998). The state contends that *Patchett* is inapplicable because here, unlike in *Patchett*, no "order" was violated. We disagree. Although, in *Patchett*, this court did not identify the statutory basis for the underlying judgment of contempt, the same statutory definition of contempt was applicable there as pertains here. That definition is found in ORS 33.015(2), which requires that conduct constituting contempt be done "willfully." Although *Patchett* addressed the violation of an existing order, that fact was merely fortuitous. Its holding is equally applicable in the present circumstance.

Judgment of contempt reversed; remanded for further proceedings.

.

.

---

impossible to say that there were words spoken or acts committed in the actual presence of the court * * *." *Id.* at 239.