Argued and submitted January 30, 2019, reversed and remanded
March 11, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID RAY ARNOLD,
*Defendant-Appellant.*

Umatilla County Circuit Court
17CN05112; A166303

462 P3d 753

Defendant appeals a judgment of summary contempt. The trial court found defendant, who appeared in court via live video stream, in contempt after the prosecutor informed the court that defendant had "flipped off" the camera. The court acknowledged that it had not seen defendant's conduct but reasoned that summary contempt could be imposed as long as the court could substantiate what had happened. The court then swore in the prosecutor as a witness to testify to what he had seen and, based on that testimony, found defendant in contempt without giving defendant an opportunity to confer with counsel off the record, call witnesses, or cross-examine the prosecutor. Defendant argues that the court erred by summarily finding defendant in contempt, because the trial court did not personally observe defendant's conduct, and thus the contemptuous conduct was not within "the immediate view and presence of the court," as required by ORS 33.096. The state does not respond on the merits but argues, first, that any error was unpreserved and, further, that any error was harmless. *Held*: First, defendant's argument was preserved. Second, the trial court erred in finding defendant summarily in contempt, because defendant's conduct was not within the court's immediate view and presence. Accordingly, defendant was entitled to the usual due process requirements. Lastly, the error was not harmless, because, under the circumstances, the lack of due process safeguards afforded to defendant did not have little likelihood of affecting the verdict.

Reversed and remanded.

Jon S. Lieuallen, Judge.

Brett J. Allin, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Kirsten M. Naito, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

Defendant appeals from a judgment of summary contempt, ORS 33.096, assigning error to the trial court's finding of summary contempt based on conduct that the court did not personally observe. We conclude that the court erred by summarily finding defendant in contempt because defendant's misconduct was not within "the immediate view and presence of the court," as required by ORS 33.096. Accordingly, we reverse and remand.

The relevant facts are uncontested. Defendant appeared by live video feed from jail during a sentencing hearing for convictions in three separate but "interrelated" cases. During that hearing, the trial court revoked defendant's probation and sentenced him to 45 months' and 90 days' incarceration, to be served concurrently. Defendant told the court that he intended to appeal the sentence because he found the sentence to be "cruel and unusual" and in violation of "the double jeopardy clause." At the relevant time discussed below, the judge was not looking at the live video feed while responding to defendant. At that point, the prosecutor observed defendant "flipping off" the camera. The following colloquy ensued:

"[PROSECUTOR]:   Your Honor, he just flipped you the bird and walked away.

"DEFENDANT:   No, you. I flipped you the bird.

"[PROSECUTOR]:   Flipped me the bird.

"THE COURT:   Well, you're in court, Mr.—

"DEFENDANT:   That's for the district attorney. The bird's for the district attorney.

"THE COURT:   Okay.

"DEFENDANT:   Bye.

"[DEFENSE COUNSEL]:   [Defendant]—

"THE COURT:   So, [defendant], that's going to—you're in the courtroom.

"DEFENDANT:   Not no more.

"THE COURT:   I guess, just technically, I did not see it. I mean, I wasn't looking at him at the time. I don't think I can—

"[DEFENSE COUNSEL]:   I didn't see it either, honestly. I was looking at the judgment.

"THE COURT:   I guess I could review the replay. I heard you say it, but I was looking over this way and down.

"[PROSECUTOR]:   I think his admission that it was for the district attorney was pretty plain.

"THE COURT:   Let me sign this other matter here first."

By the end of that colloquy, defendant had left the live video feed location.

The trial court then explained that, in its view, defendant's admission that he had flipped off the prosecutor in court, "even though it's from the jail, is sufficient for a summary contempt." The court asked if defense counsel would like to be heard on that issue. Defense counsel stated that he preferred for defendant to be present before the camera, "just so he knows what's going on." The court then ordered the deputy to bring defendant back in front of the camera.

The deputies returned defendant to the live video feed, and defense counsel conferred with defendant in open court while the prosecutor and judge were present. Defense counsel advised defendant "to remain cool and collected and composed," and then informed defendant that the judge was contemplating imposing summary contempt for defendant's earlier conduct.

Defense counsel explained to the court that defendant was probably feeling "frustrat[ed]" and "abandoned" after being sentenced to 45 months in prison and asked the court to "graciously excuse the frustration that I guess was exhibited by [defendant] in a moment of passion *** [and] not impose a summary contempt." The court asked defendant if he would like to say anything, to which defendant responded, "My attorney has it on the nose, I guess." The court then asked the prosecutor if the state would like to

respond. The prosecutor stated that he would "leave it up to the court's discretion," but that "there needs to be some sort of a consequence."

The trial court then recited its understanding of the facts and the law regarding summary contempt before ultimately concluding that defendant had committed conduct that could be punished by summary contempt:

> "I was not looking at the screen. When I look forward or down, I don't see the screen. I have screens off to my peripheral, more or less, at my ears. I did not see anything. *** [T]he prosecutor brought up that he's flipping off the court. [Defendant] responded that, no, I'm flipping off you, referencing the prosecutor. And then there's a couple statements, and he left the screen upset.

> "* * * * *

> "Regardless, [defendant], this is a courtroom, even when you're [out] there. If I allow you to flip off anybody in the court, flip me off, people yell names at me, then we would have chaos. And so summary contempt is more or less in the presence of the court. You were in the courtroom. I do have a little bit of concern that I didn't see it, and I put that on the record, but [the prosecutor] said he did see it. You have acknowledged it. And I think the presence means within the purview or the court could see it. I don't think I have to see it. If I have my back turned, if I'm getting a thing and someone keeps—I guess is flipping me off or someone else in the courtroom, I believe I have the—as long as I can substantiate that that did happen in the courtroom when I was present during the court time, it is punishable by summary contempt. That's the position I'm going to take."

The trial court then swore the prosecutor in to testify under oath. The court asked the prosecutor if he had observed defendant "flipping off the camera, which appears into the court," to which the prosecutor responded affirmatively. The court summarily found defendant in contempt and imposed a sanction of 30 days in jail to be served consecutively to defendant's 45-month prison sentence.

On appeal, defendant assigns error to the trial court finding him in contempt. Specifically, defendant argues that the summary contempt procedure authorized by ORS 33.096

was inappropriate under the circumstances here because the conduct was not within "the immediate view and presence of the court," as ORS 33.096 requires for the summary imposition of sanction for contempt. Accordingly, defendant argues, the court imposed a punitive sanction without providing defendant the requisite procedural due process safeguards, such as notice and a fair hearing.

The state does not respond on the merits. Instead, the state contends that defendant's argument is unpreserved and that this court should decline to exercise our discretion to correct any plain error. The state argues that we should not exercise our discretion because the policies behind the preservation rule were not served and because the alleged error was harmless.

We first address the state's contention that defendant's claim of error was not preserved. As a general rule, we will not consider a claim of error unless it was preserved in the trial court. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000); ORAP 5.45(1). To preserve an error for appeal, a party must have provided the trial court "with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *Wyatt*, 331 Or at 343.

"The touchstone for determining whether a contention is adequately preserved is whether the policies that underlie the preservation requirement—giving the opposing party a fair opportunity to respond, fostering appellate review through full development of the record, and giving the trial court the opportunity to fully consider and rule in the first instance—have been served in a particular case."

*State v. Ames*, 298 Or App 227, 232, 445 P3d 928 (2019) (citing *State v. Parkins*, 346 Or 333, 340-41, 211 P3d 262 (2009)); *Peeples v. Lampert*, 345 Or 209, 219-21, 191 P3d 637 (2008)).

Defendant contends that his argument regarding the trial court's construction of ORS 33.096 is preserved because the court expressly noted the issue when it stated that it had "a little bit of concern that [it] didn't see" defendant's conduct and because the trial court fully considered the legal issue before us, namely, whether he had to "view"

defendant's misconduct to proceed with summary contempt. Accordingly, the court considered that particular issue and had a fair opportunity to correct its error, and the state had an opportunity to respond. Thus, defendant argues, the policies underlying the preservation requirement were served in this case.

We agree. As noted, the trial court *sua sponte* raised the issues that defendant now raises on appeal and ruled that, as long as the court could "substantiate that [defendant's alleged conduct] did happen in the courtroom when I was present during the court time, it is punishable by summary contempt. That's the position I'm going to take." The state had an opportunity to raise any additional arguments, and the record is sufficiently developed for our review of the matter. We, therefore, conclude that the policies underlying the preservation requirement were served under the circumstances here, and that defendant's argument is preserved.[1] *See Ames*, 298 Or App at 234-35 (concluding that a matter was preserved when the policies underlying the preservation requirement were "obviously served"); *State v. Roberts*, 291 Or App 124, 130-31, 418 P3d 41 (2018) (concluding that an issue was preserved when the court raised the issue *sua sponte*, even though the defendant "did little to advance that discussion"); *State v. Smith*, 252 Or App 707, 714, 288 P3d 974 (2012), *rev den*, 353 Or 429 (2013) (concluding that an issue was preserved because "[t]he court raised, the state addressed, and the court ruled on the particular argument that the state now contends is unpreserved").

We turn next to the merits of defendant's appeal. The parties' arguments require us to construe the phrase "in the immediate view and presence of the court" contained in ORS 33.096. That statute provides:

"A court may summarily impose a sanction upon a person who commits a contempt of court *in the immediate view*

---

[1] The state argues that, although the trial court raised the issue that the court had not seen defendant's conduct, the court did not precisely address the due process arguments that defendant raises on appeal. That argument is without merit. Summary contempt is an inherent exception to the usual requirements of due process. 302 Or App at 775-76. Therefore, the trial court's consideration of whether summary contempt was permissible included a consideration of whether additional due process was required. *See id.*

*and presence of the court.* The sanction may be imposed for the purpose of preserving order in the court or protecting the authority and dignity of the court. The provisions of ORS 33.055 and 33.065 do not apply to summary imposition of sanctions under this section."

(Emphasis added.) To determine the meaning of a statutory term, we first examine the text of the statute, in context, and consider any legislative history that is helpful; if the meaning of the term remains ambiguous, we then resort to maxims of construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). When particular terms are not statutorily defined, we give them their "plain, natural, and ordinary meaning" unless the text or context indicates that the legislature intended some other meaning. *State v. Cunningham*, 161 Or App 345, 351-52, 985 P2d 827 (1999). Context includes prior versions of the statute, *Jones v. General Motors Corp.*, 325 Or 404, 411, 939 P2d 608 (1997), as well as the preexisting common law and statutory framework within which the law was enacted, *City of Salem v. Salisbury*, 168 Or App 14, 25, 5 P3d 1131 (2000), *rev den*, 331 Or 633 (2001).

ORS 33.096 governs the exercise of an Oregon court's inherent power to punish for "direct" contempt,[2] and preserves "the decades-old rule that the authority of the court to punish a contempt summarily—that is, by court order without presentation of an accusatory instrument or affidavit—exists only if the offender commits the contempt 'in the immediate view and presence of the court.'" *Barton v. Maxwell*, 325 Or 72, 75-76, 933 P2d 966 (1997). The Oregon Supreme Court has stated that "the phrase 'in

---

[2] Contempt of court is defined, among other things, as willful "[m]isconduct in the presence of the court that interferes with a court proceeding or with the administration of justice, or that impairs the respect due the court." ORS 33.015(2)(a). The common law distinguished between "direct" and "indirect" contempt. *Barton v. Maxwell*, 325 Or 72, 76, 933 P2d 966 (1997). A contempt was direct if it occurred in the immediate view and presence of the court "while sitting in a judicial capacity." *Id*. at 75-76. "The power of a court to punish for direct contempt in a summary manner is inherent in all courts, and [it] arises from the necessity of preserving order in judicial proceedings." *City of Klamath Falls v. Bailey*, 43 Or App 331, 334, 602 P2d 1107 (1979) (citing *Rust v. Pratt*, 157 Or 505, 72 P2d 533 (1937)). *See generally State v. Baker*, 126 Or App 508, 513, 868 P2d 1368 (1994) (the legislative history of ORS 33.096 "demonstrates that the traditional distinctions [between direct and indirect contempt] were to be continued").

the immediate view and presence of the court' confines the court's authority, in summarily punishing a contempt, to misconduct that occurs *in the court's immediate presence when the court is in session during a judicial proceeding.*" *Id.* at 79 (emphasis in original). *See id.* (holding that the defendant's contemptuous conduct—filing a motion in violation of the court's order—was not in the court's immediate view and presence because it did not occur during a judicial proceeding and the court did not have personal knowledge of the defendant's conduct); *State v. Ferguson*, 173 Or App 118, 125, 20 P3d 242 (2001) (holding that the defendant's contemptuous conduct—making a factual misrepresentation to the court—was not in the court's immediate view and presence because "the court acquired its asserted knowledge by personally observing the hallway outside the courtroom, off the record, while in recess").

The ordinary meaning of the phrase "in the immediate view and presence of the court" would likely include a requirement that the court actually *see* the conduct. Legislative history supports that understanding. At a committee hearing during the statute's original enactment, legislative counsel explained to the committee that sanctions for summary contempt can be imposed "when the person who commits the contempt of court does it in the immediate view and presence of the court. That's the first thing. It has to be right in front of the judge. He has to *see* it." Tape Recording, Senate Committee on Judiciary, SB 376, Feb 6, 1991, Tape 21, Side A (statement of David Heynderickx, legislative counsel) (emphasis added). However, as we have previously acknowledged, the legislature likely did not contemplate the technological advancements that today enable telephonic hearings and video conferencing in courtrooms when the legislature enacted ORS 33.096. *State v. Blackburn*, 283 Or App 843, 845, 391 P3d 929 (2017). We have, therefore, previously construed "immediate view and presence" more broadly to encompass such circumstances.

For instance, in *Blackburn*, the issue was whether a defendant who repeatedly disobeyed a court's direction to stop interrupting the court had committed contempt in the immediate view and presence of the court when the defendant appeared by telephone. We concluded that the

requirement that the contempt occur in the immediate view and presence of the court "embraces contemptuous conduct by telephone that occurs during a court proceeding while the court is in session, at least where the disruptive effects are apparent in the courtroom." *Id*. Although the court did not *see* the conduct—because the defendant appeared telephonically—the court nevertheless personally observed its effects on the hearing. The defendant ignored the court's repeated instructions over the telephone directing defendant to stop interrupting the court. The court personally heard the contemptuous conduct. On that basis, we held that the defendant's conduct occurred in the court's immediate view and presence, and accordingly the defendant could be summarily punished under ORS 33.096.

We reach the opposite conclusion here: Defendant's conduct did not occur in the immediate view and presence of the trial court. Defendant's gesture took place while on a live video feed during a judicial proceeding. Had the court personally observed the conduct, there would be no question that it had occurred in the immediate view and presence of the court. However, the court acknowledged that it did not see the conduct and had obtained its knowledge of defendant's conduct only from the prosecutor and from defendant's admission. To substantiate that defendant had done what the prosecutor said he had done, the court needed to swear in the prosecutor as a witness to testify to what he had seen. Accordingly, the conduct for which defendant was punished did not occur in the immediate view and presence of the court.

In such a case, a defendant must be afforded certain statutorily and constitutionally required process. *Barton*, 325 Or at 79 ("If misconduct occurs [outside the immediate view and presence of the court], the alleged contemnor is entitled to the more detailed contempt procedures described in ORS 33.055 (procedure for imposition of remedial sanctions) or ORS 33.065 (procedure for imposition of punitive sanctions)."); *see also* ORS 33.096 (exempting the summary imposition of sanctions for contempt committed "in the immediate view and presence of the court" from the process required for the imposition of remedial sanctions

and punitive sanctions). Defendant here was entitled to the required process.

Our conclusion is in accord with the standard that has been articulated by the United States Supreme Court in regard to summary contempt. As we have observed, "[b]ecause the inherent power to summarily punish a direct contempt is subject to constitutional limits, the pronouncements of the United States Supreme Court on that issue are instructive." *State v. Spainhower*, 251 Or App 25, 30-31, 283 P3d 361 (2012). In that regard, the Court has stated:

> "Except for a narrowly limited category of contempts, due process of law *** requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, *are actually observed by the court*, and where immediate punishment is essential to prevent demoralization of the court's authority before the public. *If some essential elements of the offense are not personally observed by the judge, so that [he or she] must depend upon statements made by others for [his or her] knowledge about these essential elements, due process requires *** that the accused be accorded notice and a fair hearing as above set out.*"

*In re Oliver*, 333 US 257, 275-76, 68 S Ct 499, 92 L Ed 682 (1948) (internal quotation marks and ellipses omitted; emphases added). A court's authority to forgo the usual due process requirements and summarily punish contemptuous conduct that occurs in the courtroom must therefore be based on the court's personal knowledge of the conduct. *See, e.g.*, *Johnson v. Mississippi*, 403 US 212, 215, 91 S Ct 1778, 29 L Ed 2d 423 (1971) (court was not "personally aware" of contemptuous conduct when bailiffs and deputies immediately brought the defendant before the judge and related to the judge that the defendant had disobeyed the court's order to keep the space reserved for jurors and county officers and

the judge clear while jurors were being called). Here, the court's knowledge of the facts was based on the representation of the prosecutor and defendant's admission, not the court's personal knowledge. Accordingly, the court erred in finding defendant summarily in contempt.

This conclusion is not to suggest that trial courts lack authority over their courtrooms in these circumstances to hold a party in punitive contempt. *See* ORS 33.065(4) (stating that a prosecutor, on his or her own initiative or at the request of a party or the court, may initiate punitive contempt proceedings). Such proceedings, however, must commence through an accusatory instrument and continue with the procedural protections provided to a defendant under ORS 33.065. *See, e.g.*, ORS 33.065(6) (stating that, "[e]xcept for the right to a jury trial, the defendant is entitled to the constitutional and statutory protections * * * that a defendant would be entitled to in a criminal proceeding" that could result in an equivalent fine or imprisonment).

The state contends that any error that the trial court made in its summary imposition of sanction was harmless because defendant was afforded the due process of law. The state argues that the only procedural protection not afforded to defendant was the filing of a formal accusatory instrument required by ORS 33.065(2) to (5), but that a failure to file a formal accusatory instrument does not render the process inadequate. *See State v. Murga*, 291 Or App 462, 422 P3d 417 (2018) (holding that the lack of an accusatory instrument did not deprive the court of subject matter jurisdiction).

We first disagree with the state that the only procedural safeguard lacking here was a formal accusatory instrument. After defendant was brought back before the video feed, he was informed by his attorney that the court was considering imposing summary contempt. Defendant was not afforded an opportunity to confer with his counsel outside of the presence of the court and prosecutor. Although defendant and his attorney were both given an opportunity to speak, defendant did not have an opportunity to call witnesses or an opportunity to cross-examine the prosecutor, who had been sworn in as the court's witness. The court

asked the prosecutor one question—whether he observed defendant "flipping off the camera"—and then proceeded immediately to find defendant in contempt. Oregon's harmless error test "consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). We cannot say, under the circumstances of this case, that the trial court's error in refusing defendant the usual procedural safeguards afforded a contemnor under ORS 33.055 and ORS 33.065 had little likelihood of affecting the verdict.

Reversed and remanded.