Argued and submitted March 28, reversed July 12, 2023

In the Matter of the Contempt Against
Oregon Health Authority.

OREGON HEALTH AUTHORITY,
*Defendant-Appellant.*

Marion County Circuit Court
22CN03618; A179181

533 P3d 827

The Oregon Health Authority (OHA) appeals from a judgment of summary contempt, imposing a $100,000 fine based on its failure to transfer a civilly committed person to either a secured residential treatment facility or the Oregon State Hospital as ordered by the court. On appeal, OHA argues that the trial court did not have authority to hold it in summary contempt. *Held*: The trial court did not have authority to hold OHA in summary contempt and impose the $100,000 fine. The conduct that the court concluded was in violation of its order was the failure of OHA to transfer the committed person to a different facility. That conduct did not occur in "the immediate view and presence of the court," as required by the summary contempt statute, because it was not conduct that occurred in the courtroom during a judicial proceeding, nor was it conduct that the judge personally witnessed.

Reversed.

Audrey J. Broyles, Judge.

Jona J. Maukonen, Assistant Attorney General, argued the cause for appellant. Also on the brief were Lisa M. Udland, Deputy Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Reversed.

**ORTEGA, P. J.**

The Oregon Health Authority (OHA) appeals from a judgment of summary contempt, ORS 33.096, imposing a $100,000 fine based on its failure to transfer a civilly committed person to either a secured residential treatment facility or the Oregon State Hospital as ordered by the court. OHA argues on appeal, among other things, that the court did not have authority to hold it in summary contempt because the alleged contemptuous conduct did not occur in "the immediate view and presence of the court," as required by ORS 33.096. We agree and reverse.

The relevant facts are undisputed. In February 2022, AG, a resident of Marion County, stipulated to a civil commitment in Multnomah County. At the time, AG was receiving treatment at Unity Center for Behavioral Health (Unity), an acute care hospital, which is located in Multnomah County. On March 31, AG was discharged from Unity for a community trial visit in Marion County. During the trial visit, the case was transferred to Marion County. AG did not do well during her trial visit and was transported back to Unity on April 20.

In June 2022, Unity sought to intervene in AG's case and moved for an order to immediately transfer AG to a secure residential treatment facility (SRTF) or the Oregon State Hospital (OSH). OHA and OSH moved to intervene to respond to Unity's motion. The court allowed the parties to intervene and set a hearing. While Unity's motion was pending, Marion County Behavioral Health referred AG to other placements, including to Halsey St., a SRTF, but AG had not yet obtained admission.

On July 8, the court held an evidentiary hearing and granted Unity's motion. On July 12, the court entered its written order, which provides, in part:[1]

"IT IS FURTHER ORDERED that the Oregon Health Authority must transfer respondent from Unity to a secure residential treatment facility, to include the Oregon State Hospital if appropriate, by July 15, 2022 at 12:00 p.m. lf

---

[1] OHA has separately appealed the immediate placement order, which is currently pending, *Oregon State Hospital v. A. G.*, A179054.

no such placement is made, the Oregon Health Authority is to appear and show cause why it should not be held in contempt on July 15, 2022 at 1:30 p.m."

(Uppercase in original.)

At the July 15 hearing, OHA confirmed that AG was admitted to Halsey St. that day. OHA also filed documentation that placed AG on a trial visit to participate in treatment at Halsey St. During the July 15 hearing, the court stated,

"And I'm pleased that AG is placed with Halsey. And I would just say that if for some reason Halsey *** is doing anything different, that I would not expect AG to go back to Unity.

"But I would expect her to go to the State Hospital until either the *** issue is cleared up at Halsey or another SRTF is found, okay?"

Later the court addressed a question from AG's family, stating:

"In answer to your question in terms of if the trial visit does not work or if there was some issue, I think that the statute would require that if the trial visit was revoked, then [AG] would go again—my understanding would be that she would go to the State Hospital because that is the only secure facility that could offer something that these other facilities could not."

None of the counsel present at the hearing addressed the court's understanding.

On Saturday, July 16, AG's placement at Halsey St. failed, and AG was immediately transported back to Unity.

On July 20, the court held a hearing to address AG's placement. After denying OHA a stay of the immediate placement order, the court asked OHA how it "defend[ed] its violation of my order that was very clear that if she moved out of Halsey, she did not go back to Unity?" After some discussion with counsel, the court took testimony from Steve Allen, Behavioral Health Director at OHA. Allen testified that he first learned that AG had left Halsey St. and returned to Unity late Sunday afternoon, after Unity had readmitted her pursuant to an arrangement between

Halsey St. and Unity. Allen testified that OHA was actively working to find AG a new placement, but that OHA could not require those programs to admit her. He testified that he also did not have authority over OSH to order it to admit AG, nor did AG require that level of care. He also testified that OSH had to prioritize other individuals who did not have access to any care, such as defendants in jail who could not aid and assist in their own defense. The court did not accept OHA's explanations, finding "that there has been a local violation of my court order. And I am going to fin[d OHA] in contempt of my order, which was that she not go back to Unity." The court also imposed a $100,000 fine.

Following the hearing, the trial court opened a new matter and entered a judgment of summary contempt under ORS 33.096. That judgment provides that the contemptuous conduct was that OHA "failed to take the directed action" of transferring AG "from Unity in Portland to a secure residential treatment facility/State Hospital by 7/15/22." The judgment also imposed the $100,000 fine to be paid by July 22.

On appeal, OHA first argues that the court erred in holding OHA in summary contempt because OHA's alleged contemptuous conduct occurred outside the presence of the judge. We agree with OHA that the trial court did not have authority to use summary contempt to punish OHA's alleged violation of the court's order.

Summary contempt is governed by ORS 33.096, which provides:

> "A court may summarily impose a sanction upon a person who commits a contempt of court in the immediate view and presence of the court. The sanction may be imposed for the purpose of preserving order in the court or protecting the authority and dignity of the court. The provisions of ORS 33.055 and 33.065 do not apply to summary imposition of sanctions under this section."

That statute preserves "the decades-old rule that the authority of the court to punish a contempt summarily— that is, by court order without presentation of an accusatory instrument or affidavit—exists only if the offender commits the contempt 'in the immediate view and presence of the court.'" *Barton v. Maxwell*, 325 Or 72, 76, 933 P2d 966 (1997).

The Supreme Court has long held that the court's authority to summarily punish contempt is confined "to misconduct that occurs *in the court's immediate presence when the court is in session during a judicial proceeding.*" *Id.* at 79 (emphasis in original). If a court must depend upon statements made by others to determine if the contempt occurred, then the court does not have the authority to use summary contempt to punish that conduct. *See, e.g.*, *State v. Arnold*, 302 Or App 765, 774-75, 462 P3d 753 (2020) ("A court's authority to forgo the usual due process requirements and summarily punish contemptuous conduct that occurs in the courtroom must therefore be based on the court's personal knowledge of the conduct.").

Conduct that does not fall with the ambit of conduct that a court has authority to punish through summary contempt has included a defendant who filed a motion by mail in violation of the court's order, *Barton*, 325 Or at 79; a defendant who made a factual misrepresentation to the court about her conduct when the court's knowledge that it was a misrepresentation was obtained by observing the hallway outside the courtroom during a recess, *State v. Ferguson*, 173 Or App 118, 125, 20 P3d 242 (2001); and a defendant who "flipped off" the prosecutor during a proceeding when the court did not personally see the conduct occur, even though the defendant admitted to the conduct, *Arnold*, 302 Or App at 774.

Here, the court did not have authority to hold OHA in summary contempt and impose the $100,000 fine. The conduct that the court concluded was in violation of its order was the failure of OHA to transfer AG to either a SRTF or OSH after AG's trial visit with Halsey St. failed. That conduct did not occur in the immediate view and presence of the court, as required by ORS 33.096. It was not conduct that occurred in the courtroom during a judicial proceeding, nor was it conduct that the judge personally witnessed. Indeed, the court swore in a witness and took testimony during the hearing to substantiate the conduct that the court concluded was in contempt of its order. Accordingly, we reverse.

Reversed.