No. 342          May 30, 2024          697

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. J. G.,
a Person Alleged to have Mental Illness.

OREGON STATE HOSPITAL
and Oregon Health Authority,
*Appellants,*

*v.*

A. J. G.,
*Respondent,*
*and*

LEGACY EMANUEL HOSPITAL & HEALTH CENTER,
dba Unity Center for Behavioral Health,
*Intervenor-Respondent,*
*and*

MARION COUNTY,
*Other Interested Party.*

Marion County Circuit Court
22CC00740; A179054

Audrey J. Broyles, Judge.

Argued and submitted March 4, 2024.

Jona J. Maukonen, Assistant Attorney General, argued the cause for appellants. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Liza Langford argued the cause and filed the brief for respondent A. J. G.

Eric J. Neiman argued the cause for respondent Legacy Emanuel Hospital & Health Center. Also on the brief were Emma P. Pelkey and Epstein Becker Green; and Alex Van Rysselberghe, Timothy W. Snider, Nathan R. Morales, and Stoel Rives, LLP.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Motion to dismiss appeal denied; July 12, 2022, order vacated and remanded with instructions to grant Oregon State Hospital's and Oregon Health Authority's motion to dismiss the motion for immediate placement.

**ORTEGA, P. J.**

In this civil commitment case, the Oregon State Hospital and the Oregon Health Authority (collectively, OHA) appeal from a post-judgment order of the trial court that directed OHA to immediately place AG, a person civilly committed to the authority of OHA, into a secure residential treatment facility. In the order, the court granted a motion for immediate placement brought by Legacy Emanuel Hospital & Health Center d/b/a Unity Center for Behavioral Health (Unity), an acute-care psychiatric hospital, which was treating AG when she was civilly committed, and denied OHA's motion to dismiss Unity's motion for that immediate placement. In this appeal, we are asked to decide whether we have jurisdiction to review the placement order, whether the appeal is moot, and whether the trial court had authority to consider Unity's motion and issue the placement order.

We conclude that we have jurisdiction and that the appeal is not moot. As for the final question, we conclude that the court did not have authority to consider Unity's motion or issue the placement order given the scope of a civil commitment case as limited by statute. As a result, the trial court erred in denying OHA's motion to dismiss. Accordingly, we vacate the court's placement order and remand with instructions to grant OHA's motion to dismiss Unity's motion for immediate placement.

## I.   FACTS AND PROCEDURE

The following facts are not in dispute. AG, a Marion County resident, first came to Unity, located in Multnomah County, on January 1, 2022. Unity is a free-standing psychiatric hospital with emergency services as well as several inpatient units. Its intended function is to admit individuals experiencing a psychiatric crisis, stabilize the person's condition, and then transfer the person to a facility where they can receive the next level of care. The average length of stay for a patient at Unity is 14 days.

When AG arrived at Unity, her thinking was disorganized, she was experiencing command auditory hallucinations telling her to kill herself as well as hyperreligious delusions and suicidal and homicidal thoughts,

and she was hypersexual. About four weeks after admitting her, Unity initiated proceedings to have AG committed to OHA. On February 11, AG stipulated to a civil commitment in Multnomah County to the custody of OHA for up to 180 days, but she remained at Unity. On March 31, AG was discharged from Unity for a trial visit in a community placement in Marion County, and the commitment case was transferred to Marion County. Shortly after beginning that trial visit, AG overdosed on fentanyl and later was arrested on a parole violation and jailed. On April 20, AG was transported from the jail back to Unity. At that time, she was again in a decompensated state.

A week after AG was readmitted to Unity, on April 28, the exceptional needs care coordinator for Marion County, in cooperation with Unity, referred AG for admission to the Oregon State Hospital. On May 3, OHA approved the referral and AG was placed on the waitlist, but OHA denied Unity's separate request for expedited admission for AG. While she was on the waitlist, OHA inquired about post-acute intensive treatment services for AG, which involves a short-term inpatient secure residential treatment facility that is available while a person is on the Oregon State Hospital waitlist. On June 16, however, AG was removed from the Oregon State Hospital waitlist because she no longer needed that level of care. At that point, the Marion County care coordinator made several other referrals to various forms of residential treatment, all of which were accepted but which resulted in AG being placed on waitlists. Thus, after AG was removed from the Oregon State Hospital waitlist, she remained at Unity.

While AG was still on the Oregon State Hospital waitlist, on June 1, Unity moved to intervene in the civil-commitment case for the purpose of "obtaining an order to immediately transfer [AG] to an appropriate long-term placement." At that point, the court appointed counsel to represent AG. For its part, OHA also moved to intervene but did not oppose Unity's intervention. On June 21, the court granted the motions to intervene. On June 24, Unity filed its motion for immediate placement of AG. In response, OHA moved to dismiss Unity's motion or alternatively deny

it, arguing that Unity could not obtain the relief requested through intervention in the case and that the court did not have authority to direct placement decisions. AG did not file a written response to either Unity's or OHA's motions, but her attorney participated in the hearing on the motions. At the hearing AG's attorney stated that AG's position was that she wanted to transfer to a less restrictive placement, acknowledging that that placement may be available soon but is not available now, and also stated that AG's main desire was to not be placed at the Oregon State Hospital.

At the hearing on Unity's motion, the court summarily denied OHA's motion to dismiss, explaining that, in its view, "the Court has the inherent authority to address the issues that have been raised today." After taking evidence, the court granted Unity's motion, making extensive findings about AG's history, including that the "people who are intimately familiar with AG and her needs believe that a secure residential treatment facility is most appropriate at this time." The court found that Unity was not a "suitable" placement for AG, and that "there has been a dereliction of the obligation of OHA to find [AG an] appropriate long-term placement." The court found that AG was unable to advocate for herself and that OHA's failure to find a long-term placement violated her due process rights, which "require[] that mentally ill persons who are detained receive treatment calculated to lead to the end of their involuntary detention" and give a "realistic opportunity to be cured or to improve the mental condition." The court stated:

> "This is not an issue of the Court telling OHA where [AG] needs to go. That would be inappropriate. But this is a directive to figure out the appropriate [placement] rather than turning a blind eye to this issue. Lack of resources and capacity issues and whatever has been wreaking havoc apparently with OHA for the last several years is not a defense to violation of someone's civil liberties and civil rights."

The court then ordered that

> "AG be transported to a secure residential treatment facility to include Oregon State Hospital if appropriate by next Friday, July 15th by noon.

"And if that does not happen, then I expect all parties to appear in front of me and show cause why that hasn't happened and why *** OHA would not be potentially found in contempt."

On July 12, the court entered an order memorializing its oral pronouncement (the placement order), which provides:

"1. On February 11, 2022, respondent was involuntarily committed to [OHA] for 180 days of treatment.

"2. Aside from a brief trial visit, respondent has spent her entire commitment period at Unity, an acute care hospital that is not best able to treat her at this time. [OHA] has not made a placement decision or determined that Unity is best able to treat respondent.

"3. Respondent has a right to adequate and effective treatment. The State of Oregon must provide all civilly committed persons with access to mental health treatment that gives them a realistic opportunity to be cured or to improve the mental condition for which they were confined.

"4. Unity is not an appropriate facility at this time for respondent because it cannot provide adequate and effective long-term treatment that respondent is entitled to.

"Based on these findings,

"IT IS HEREBY ORDERED that Unity's motion for immediate placement is GRANTED; and

"IT IS FURTHER ORDERED that [OHA] must transfer respondent from Unity to a secure residential treatment facility, to include the Oregon State Hospital if appropriate, by July 15, 2022 at 12:00 p.m. lf no such placement is made, [OHA] is to appear and show cause why it should not be held in contempt on July 15, 2022 at 1:30 p.m."

OHA appeals from that order, and both Unity and AG appear on appeal to respond.[1]

---

[1] In a prior opinion, *Oregon Health Authority*, 327 Or App 1, 533 P3d 827 (2023), we set out what occurred following the entry of the placement order, which included the court holding OHA in summary contempt and fining it $100,000. We reversed the contempt judgment because the court did not have authority to punish OHA through summary contempt proceedings. *Id.* at 5.

## II.   UNITY'S JUSTICIABILITY ARGUMENTS

Before we can address the merits of OHA's appeal, we must first address two issues of justiciability that Unity raises in its answering brief: appellate jurisdiction and mootness. As explained below, we conclude that we have jurisdiction to review this appeal under ORS 19.205(3) and that the controversy is not moot.

### A.   *Appellate Jurisdiction*

As an initial matter, Unity asserts that we do not have jurisdiction to consider OHA's appeal of the placement order. For jurisdiction, OHA relies on ORS 19.205(3), which provides that "[a]n order that is made in the action after a general judgment is entered and that affects a substantial right *** may be appealed in the same manner as provided in this chapter for judgments." Under that provision, "all orders entered after a general judgment [are] appealable so long as the order affects a substantial right." *Bhattacharyya v. City of Tigard*, 212 Or App 529, 535, 159 P3d 320 (2007). It is undisputed that the placement order was made after general judgment was entered. The only issue is whether the placement order "affects a substantial right."

OHA argues that the order affects a substantial right because it required OHA to make a specific type of placement for AG—to a secured residential treatment facility—and it continues to be in effect, exposing OHA to future litigation if AG's placement changes. Unity counters that the placement order does not affect a substantial right because it merely effectuated the commitment judgment by requiring OHA to make a suitable placement for AG, which OHA was already statutorily required to do. Unity also asserts that the potential for future litigation does not confer jurisdiction.

We initially observe that Unity's arguments about jurisdiction mirror its arguments on the merits of the order—that is, Unity asserts that the order merely effectuates the commitment judgment. Whether or not Unity is correct about what the order does is at the heart of the merits of OHA's appeal. However, "[t]he issue for purposes of determining appealability *** is not whether one party or the

other is right on the merits of the appeal, but whether an order * * * is an order that 'affects a substantial right' under ORS 19.205(3)." *Mendoza v. Xtreme Truck Sales, LLC*, 314 Or App 87, 92, 497 P3d 755 (2021).

We conclude that the placement order does affect a substantial right. On its face, the placement order directs OHA to take a particular action with respect to AG—an action that OHA contends the trial court did not have authority to require—and further provides that, should OHA fail to take the required action, OHA must appear and explain why it should not be held in contempt. *See Bhattacharyya*, 212 Or App at 534 (concluding that an order setting aside judgments affected a substantial right because it "exposed petitioner to further litigation, additional costs, and attorney fees"). The placement order affects a substantial right of OHA and, thus, it is appealable under ORS 19.205(3).

B.   *Mootness*

Unity also asserts that we should dismiss OHA's appeal because it is moot.[2] "A case becomes moot when a decision on the merits 'would resolve merely an abstract question without practical effect.'" *Garges v. Premo*, 362 Or 797, 801, 421 P3d 345 (2018) (quoting *Warren v. Lane County*, 297 Or 290, 293, 686 P2d 316 (1984)). "Whether a case has become moot will depend on a factual determination regarding the potential impact of the court's decision on the parties." *Id.* at 802. The burden is on the party seeking dismissal to establish that a case is moot. *State v. K. J. B.*, 362 Or 777, 785, 416 P3d 291 (2018).

Here, Unity asserts that the placement order can no longer have any practical effect on the parties because in November 2022 AG was accepted into a long-term care facility and, thus, the dispute no longer exists, and the placement order no longer applies. OHA responds that the mere fact that OHA is currently in compliance with the order does not render it moot. OHA argues that the terms of the order affect its ability to transfer AG to any placement other than a secured residential treatment facility or the Oregon State

---

[2] The Appellate Commissioner denied Unity's motion to dismiss for mootness but, in denying reconsideration of that order, the Chief Judge expressly permitted Unity to raise the issue in briefing to the merits panel.

Hospital, even if her needs change. Unity argues that the placement order does not have any continuing effect because it was based on AG's circumstances and needs at the time of the order and those circumstances are now changed.

We conclude that Unity has not carried its burden to demonstrate that the appeal is moot. Nothing in the placement order suggests that it ceases to be enforceable once AG is placed in a secured residential treatment facility. Indeed, AG was placed in such a facility in July 2022, according to the terms of the placement order, but when that placement promptly failed due to AG's behavior in the placement, the trial court held OHA in contempt. *See Oregon Health Authority*, 327 Or App 1, 533 P3d 827 (2023). The placement order does not have an expiration date and, should AG's current placement end while she is civilly committed and in need of long-term treatment, the placement order appears to have continuing effect. None of the parties on appeal have provided us with any information that would lead us to believe that the placement order has been vacated, replaced with a different order, or that AG is no longer committed to the custody of OHA such that the order could not have any continuing effect in this case.[3] As a result, we deny Unity's renewed motion to dismiss the appeal as moot.

## III. OHA'S APPEAL

We proceed to address the merits of OHA's appeal. Essentially, OHA asserts that the court reviewed and directed AG's placement, which is a decision that is statutorily committed to the discretion of OHA and, thus, the court had no authority to enter that order.[4] Taking a different

---

[3] At oral argument in March 2024, OHA represented that AG remains civilly committed. Our understanding from OHA is that AG's civil commitment has continued well beyond the initial 180-day commitment period under the procedure that allows OHA to seek an order of the court every 180 days to continue a commitment. *See* ORS 426.301; ORS 426.303; ORS 426.307.

[4] In its appeal, OHA raises two issues: the trial court's authority to issue the placement order and Unity's constitutional standing to obtain the order to the extent it was based on AG's federal due process rights. Ordinarily, we would proceed first to address standing, because it raises an issue of justiciability. *See Concienne v. Asante*, 299 Or App 490, 498, 450 P3d 533 (2019), *rev den*, 366 Or 135 (2020) (We "have an independent obligation to consider jurisdictional issues, including standing." (Internal quotation marks omitted.)). However, because we conclude that the court did not have authority to issue the order on any basis

view, AG and Unity assert that the court's order was an order enforcing the commitment judgment, which the court could enter pursuant to its inherent authority to enforce judgments. We conclude that the court did not have authority—statutory or inherent—in a civil commitment proceeding and at the request of the hospital currently treating AG, to review AG's current placement and circumstances and issue an order directing OHA to transfer AG to a different facility, as the court undisputedly was asked to do and did. Thus, the court erred when it denied OHA's motion to dismiss.

A.   *The court lacked statutory authority to consider Unity's motion and issue the placement order.*

AG was civilly committed to the custody of OHA as a "person with mental illness," which is provided for in ORS 426.005 to 426.390. Those statutes address the procedures to be followed both for the detention and care of a person who has not yet been committed and for the civil commitment of that person. *See also generally State v. C. H.*, 195 Or App 538, 542-44, 98 P3d 767 (2004), *rev den*, 338 Or 16 (2005) (describing commitment statutes). Those statutes set out a limited scope for proceedings under ORS 426.095,[5] with a limited number of potential outcomes. Under ORS 426.130, if the court finds that the person is a "person with mental illness," as defined in ORS 426.005(1)(f), there are three potential outcomes: (1) the court must release the person and dismiss the case if the person is willing and able to participate in voluntary treatment, (2) the court may order conditional release of the person, subject to the requirements of ORS 426.125, or (3) the court may order the person committed to OHA "for treatment" if either of the other two options is "not in the best interest of the person."

---

raised by Unity, we do not separately address whether Unity had constitutional standing to base its request on AG's constitutional due process claims.

[5] For the commitment hearing, only two parties are identified as having an interest, such that they have the right to request a postponement or cross-examine witnesses: the person alleged to have a mental illness (with their legal counsel) and the state. ORS 426.095 (setting out commitment hearing procedures); *see also* ORS 426.100 (setting out rights of a person alleged to have a mental illness and identifying who is responsible for representing the state's interest).

If the court commits a person to OHA, then OHA or its designee is required to take the person "into its custody, and ensure the safekeeping and proper care of the person until the person is delivered to an assigned treatment facility ***." ORS 426.150. Post-commitment, the commitment statutes do not contemplate further involvement of the court in the case except in two situations, both of which involve further restraint on the person's liberty. The first involves the transfer of a committed person to a more restrictive class of facility, as set out in ORS 426.275. Under that statute, a court may, on its own motion, hold a hearing after receiving notice that the committed person has not adhered to the conditions of the less restrictive facility and determine whether the person should continue in the placement or be returned to OHA. ORS 426.275(2), (3); *see* ORS 426.060(2)(b)(C) (transfers to a facility in a more restrictive class must follow the procedure in ORS 426.275). The second involves recommitment orders. Under ORS 426.301, ORS 426.303, and ORS 426.307, the court must issue a court order of commitment when OHA seeks to continue a period of commitment for a person past the initial 180 days. Notably, the statutes do not contemplate court involvement in either OHA's decision for an initial placement of a committed person or the transfer of a committed person to a facility that is in an equally restrictive class, ORS 426.060(2)(b)(A), or in a less restrictive class, ORS 426.060(2)(b)(B), ORS 426.273.

The role of a trial court in civil commitment cases, as contrasted to OHA's role, is reinforced by ORS 426.060. Under ORS 426.060(1), "[c]ommitments to the Oregon Health Authority shall be made only by the judge of a circuit court in a county of this state." Then, ORS 426.060(2) sets out "a nonexclusive list of powers [OHA] may exercise concerning the placement of persons committed." Three of those powers are relevant here. The first is the final, discretionary decisionmaking authority to place committed persons:

> "In its discretion and for reasons which are satisfactory to [OHA], [OHA] may direct any court-committed person to the facility best able to treat the person. The decision of [OHA] on such matters shall be final."

ORS 426.060(2)(a).[6] The second is the discretionary authority to transfer a person to a different facility, subject to certain requirements. ORS 426.060(2)(b). And the third is that OHA may, pursuant to its rules, "delegate to a community mental health program director the responsibility for assignment of persons with mental illness to suitable facilities or transfer between such facilities under conditions which [OHA] may define." ORS 426.060(2)(d).

We agree with OHA that, in the context of a civil commitment case, the legislature intended to grant to OHA the sole discretionary authority to direct the placement and transfer of persons civilly committed to the custody of OHA.

Having so concluded, however, we emphasize that, here, the hospital treating AG brought the motion to the court; AG herself did not seek the immediate placement order. Nothing in the civil commitment statutes evinces that the legislature intended for a treating facility to be able to intervene in a civil commitment proceeding and seek transfer of the person from the facility. We do note, however, that the statutes contemplate that the committed person can access the courts when needed. Under ORS 426.380, a committed person or "a friend" on behalf of the person is entitled to petition for a writ of habeas corpus. And, under ORS 426.385, a committed person has enumerated rights, two of which are of note here. The first recognizes that a committed person is not legally incompetent based on the commitment alone. ORS 426.385(1)(p) (A committed person has the right to "[e]xercise all civil rights in the same manner and with the same effect as one not admitted to the facility, *** unless the person has been adjudicated incompetent and has not been restored to legal capacity."). The other right is that a committed person has the right to "[b]e represented by counsel whenever the substantial rights of the person may be affected[.]" ORS 426.385(1)(i). Those rights are required to be posted in facilities housing committed persons and must be given to the person upon admission. ORS 426.395.

---

[6] "Facility" means "a state mental hospital, community hospital, residential facility, detoxification center, day treatment facility or such other facility as the authority determines suitable that provides diagnosis and evaluation, medical care, detoxification, social services or rehabilitation to persons *** who have been committed to the Oregon Health Authority under ORS 426.130." ORS 426.005(1)(c).

Those statutes further inform our inquiry because those rights indicate that, whatever ability a committed person or "a friend" acting on their behalf may have to seek an order of the court directing their placement, a facility treating a committed person cannot just step into the shoes of the committed person, without first taking steps to legally act on their behalf. [7] We emphasize that the commitment proceeding itself is a limited proceeding governed by specific statutory procedures. Here, the statutes do not provide the court statutory authority to consider Unity's motion and issue the placement order.

B. *The court lacked inherent authority to consider Unity's motion and issue the placement order.*

Below and on appeal, Unity has maintained that the court could consider and grant its motion based on the court's "inherent authority" to enforce the commitment judgment. Likewise, at the hearing on the motion, the trial court stated that it was acting pursuant to its "inherent authority" without further explanation. We conclude, however, that the court did not have inherent authority to consider Unity's motion and issue the placement order.

On appeal, AG and Unity raise slightly different arguments about the court's inherent authority. AG's argument is specifically premised on the inherent authority of the court to use contempt to compel compliance with its orders and judgments and cites to the contempt statutes, ORS 33.015 to 33.155, and ORCP 78 B. We summarily reject that argument because the court was not purporting to act through its contempt power when it issued the placement order itself, *see, e.g.*, ORS 33.055 (setting out procedure for imposition of remedial contempt sanctions), nor was it enforcing a judgment that "direct[ed] a party to perform a specific act," ORCP 78 B. *See also Air Rescue Systems Corp. v. Lewis*, 292 Or App 294, 299, 423 P3d 775 (2018) (explaining that, to be enforceable through contempt, an order "must be an order that is certain and definite in its terms").

---

[7] Although it is not challenged in the appeal, we express our skepticism that ORCP 33 could provide a means for any person to intervene in this case after entry of the general judgment of commitment. *See* ORCP 33 (providing procedure for intervention "[a]t any time before trial").

We turn to Unity's argument, which is based on a broader idea than AG's argument, because it includes the idea that a court can enforce a judgment through means other than just contempt. We agree with Unity that "[c]ourts have inherent power" to do things necessary to the "perform[ance of] their judicial functions," even "when the legislature has not otherwise given them authority to do those things." *Cox v. M. A. L.*, 239 Or App 350, 353, 244 P3d 828 (2010) (citing *Ortwein v. Schwab*, 262 Or 375, 385, 498 P2d 757 (1972), *aff'd*, 410 US 656, 93 S Ct 1172, 35 L Ed 2d 572 (1973)). That power includes "the power to compel obedience to a court's own orders and judgments." *Law v. Zemp*, 362 Or 302, 327, 408 P3d 1045 (2018); *see also* ORS 1.010(4) ("Every court of justice has power *** [t]o compel obedience to its judgments, orders and process ***."). Fundamental to that concept though, is that the court is enforcing the terms of an order or judgment. Here, neither Unity's motion nor the court's placement order was directed at enforcing compliance with the commitment judgment.

The relevant portion of the commitment judgment provided, in its entirety, "It is therefore ordered the above-named person be committed and promptly delivered to the Mental Health Division for a period not to exceed 180 days." At most, the judgment could also be read to incorporate the ORS 426.130 provision that a person with mental illness is committed to OHA "for treatment." However, nothing in the judgment implicates any decision OHA may or may not make with regard to a specific decision about where AG should obtain that treatment, nor did it reference any statutes or regulations relevant to AG's placement or any other post-commitment actions. Nor do we believe the commitment judgment could have included such terms, based on the statutory scheme set out above.

However, Unity's motion, which it titled "motion for immediate placement," sought an immediate placement order for AG that was predicated on ORS 426.060(2) and OAR 309-033-0290, and on Unity's assertion that OHA's failure to place AG in a long-term placement pursuant to those authorities violated her statutory and constitutional due process rights. Simply put, Unity's motion did not ask

the trial court to enforce any of the terms of the commitment judgment in this case.[8]

Likewise, the court's process and ultimate order did not purport to enforce the terms of the commitment judgment. Rather, the court held a hearing and, acting as a fact-finder, determined what type of facility was most suitable for AG, and then directed OHA to place AG in that specific type of facility, or face contempt sanctions. Again, the placement order did not enforce any terms of the civil commitment judgment, nor did it merely direct OHA to comply with its statutory and regulatory duty to make a discretionary decision about AG's treatment placement.

Whatever inherent authority a trial court may have to enforce its judgments does not encompass what occurred here—particularly in light of the explicit statutory scheme that places the decision on whether to commit a person solely with the trial court and, in turn, places the decision on where a committed person should be placed for treatment solely with OHA or its designee. Unity has not asserted, and we do not think we could conclude, that that scheme is "such a restriction upon the performance of the judicial function that the court can ignore the legislative command under the guise of exercising its inherent power." *Ortwein*, 262 Or at 385-86.

C.  *Conclusion*

We in no way minimize the reasons for concern regarding the scenario this case presents. AG was left for months in an acute-care facility that, by all accounts, was not able to treat her mental illness beyond stabilizing her for the next level of care. However, this appeal presents a fairly narrow legal question: whether the trial court could, in a civil commitment proceeding and based on the motion of a treating hospital, review AG's circumstances and direct OHA to transfer AG to a different facility. We conclude that

---

[8] We recognize that in reply to OHA's motion to dismiss and response to its motion, Unity asserted that the court could grant its motion under the court's inherent powers to compel obedience to the court's judgment. That is the same argument that Unity asserts on appeal as a source of authority for the court. However, Unity did not point to any term in the judgment itself that it was asking the court to enforce.

it could not. Placement of civilly committed persons is statutorily within the discretion of OHA. A third-party challenge to that decision, or a failure to make a particular placement decision, on whatever basis, is not a claim that the legislature contemplated could occur within the limited statutory framework of a civil commitment case.[9] Accordingly, the trial court erred in denying OHA's motion to dismiss.

Motion to dismiss appeal denied; July 12, 2022, order vacated and remanded with instructions to grant Oregon State Hospital's and Oregon Health Authority's motion to dismiss the motion for immediate placement.

---

[9] OHA has asserted that any person challenging OHA's decision on placement or failure to make a decision on placement is required to proceed through the Administrative Procedures Act. We need not and do not decide that issue.